## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:                                        :
                                              :
**DYCOAL, INC.,**                             :
                                              :    **Bankruptcy No. 99-24594-MBM**
                          Debtor.             :
....................................................:..............................................................................

**Dycoal, Inc., et al.,**                     :    **Chapter 11**
                          Plaintiffs,         :
                                              :
                          v.                  :    **Adversary No. 05-2206-MBM**
                                              :
**Internal Revenue Service, et al.,**         :
                          Defendants.         :

Appearances:        Michael Kaminski, for Dycoal, Inc.
                    Robert Sable and David Swan, for Northwestern Synfuels
                      LLC, et al.
                    Joel Helmrich, for H. Briquetters Ltd., et al.
                    Dara Oliphant, for Internal Revenue Service.

### MEMORANDUM OPINION

Dycoal, Inc., the instant debtor (hereafter "the Debtor"), and other entities

who claim to presently hold ownership interests in five briquetters (hereafter

collectively "Plaintiffs"), which briquetters (hereafter "the Briquetters") were

owned by the Debtor pre-petition but have since been transferred to such

entities, bring the instant three-count adversary action against, among other

named defendants, the Internal Revenue Service (hereafter "the I.R.S.").

Plaintiffs seek the following relief via such adversary action:

(a)      a determination by the Court regarding ownership of title to the

         Briquetters, and, *inter alia*, a determination that such title no longer rests

         with the bankruptcy estate of the Debtor (Count I),

(b)      a declaration, issued by the Court pursuant to 11 U.S.C. § 505(a)(1), to

the apparent effect that synthetic fuel produced by the Briquetters prior to

the confirmation of the Debtor's reorganization plan (hereafter "the Plan")

qualified for, and thus generated pre-confirmation, tax credits under

Internal Revenue Code (I.R.C.) § 29, notwithstanding that a federal

income tax return has yet to be filed with the I.R.S., either pre- or post-

confirmation, that reflects the utilization of such tax credits so generated

(Count II), and

(c)     enforcement of the June 2, 2000 court order that confirmed the Plan

(hereafter "the Confirmation Order") as against the I.R.S. on the ground

that the Confirmation Order and the provisions of the Plan so confirmed

bind the I.R.S. such that it may not now challenge factual findings set forth

in the Confirmation Order that purport to establish all factual predicates

necessary to a determination that the synthetic fuel produced by the

Briquetters did, indeed, generate I.R.C. § 29 tax credits (hereafter "the

Tax Credit Findings") (Count III).

The I.R.S., who is named as a party defendant in Counts II and III of Plaintiffs'

adversary action, brings a motion for judgment on the pleadings. Counts II and

III are the only counts for which the I.R.S. is a named party defendant, and the

I.R.S. is the sole named party defendant for each such count.

The Court, in an Order of Court dated May 27, 2005, (a) granted such

motion by the I.R.S. with respect to Count III, (b) deferred ruling on such motion

as it regards Count II, and (c) continued Count I until the Debtor provides further

information to the Court so as to enable the Court to grant the relief sought

2

therein.  Subsequent to the Court's May 27, 2005 ruling, Plaintiffs moved for

reconsideration to alter or amend such ruling as it pertains to Plaintiffs' Count III,

and simultaneously filed a memorandum both (a) in support of such motion to

reconsider, and (b) with respect to issues touching upon Plaintiffs' Count II,

which count the Court has yet to rule upon.  The Court will not presently rule

upon Plaintiffs' reconsideration request as it respects their Count III given that a

future hearing has been scheduled and not yet held regarding the same.

However, the Court will now enter its decision regarding Plaintiffs' Count II.

Because the Court's decision regarding Plaintiffs' Count III affects the

Court's decision regarding Plaintiffs' Count II, the Court will first say a few words

regarding such Count III.  The Court ruled in the I.R.S.' favor on Count III

because the Court determined, in turn, that the I.R.S. is not bound by the terms

of the Plan and the Confirmation Order.  The Court held that the I.R.S. is not so

bound

> because, even presuming *arguendo* that the I.R.S. was a party-in-
>
> interest with respect to the instant bankruptcy case pursuant to 11
>
> U.S.C. § 1109(b), the I.R.S. nevertheless was not, as Plaintiffs
>
> apparently concede, one of the parties expressly described in 11
>
> U.S.C. § 1141(a), which statutory provision, the Court holds, sets
>
> forth, with exceptions not applicable herein, the universe of parties
>
> that may be bound by a confirmed plan or order that confirms such
>
> plan, *see* In re Union Golf of Florida, Inc., 242 B.R. 51, 59-60
>
> (Bankr.M.D.Fla. 1998).

3

Order of Court, dat. May 27, 2005, at 2-3.  Such decision is supported not only

by the Union Golf decision but also by several decisions cited therein, *see* Union

Golf, 242 B.R. at 56-57 (citing In re Food City, Inc., 110 B.R. 808, 813

(Bankr.W.D.Tex. 1990) (holding that "the S.E.C. does not qualify as a 'creditor' of

the estate bound by the confirmed plan" pursuant to § 1141(a) and that,

therefore, "[t]he S.E.C. would thus not be barred from enforcing the securities

laws with respect to the violation arising out of the plan notwithstanding its

confirmation by court order"), and In re Norwesco Development Corp., 68 B.R.

123, 127 (Bankr.W.D.Pa. 1986) (holding that a government agency seeking to

enforce a prior order regarding pre-petition acts of a debtor is not bound by a

confirmed plan (a) if such agency fails to participate in the confirmation of such

plan, (b) if the obligations that such agency seeks to impose upon such debtor

do not constitute claims, (c) notwithstanding that such plan purports to treat such

debtor's obligations to such agency, and (d) since it thus is not a named entity

within § 1141(a))), as well as the U.S. Supreme Court's decision in Holywell

Corp. v. Smith, 503 U.S. 47, 58-59, 112 S.Ct. 1021, 1027-1028, 117 L.Ed.2d 196

(U.S. 1992) (although creditors with pre-petition claims are bound by a confirmed

plan pursuant to § 1141(a), post-petition creditors, because they do not fall within

the reach of § 1141(a), are not so bound, even if such post-petition creditors are

given a chance to object to a confirmed plan and they choose not to so object).

The Court acknowledged in its May 27, 2005 decision that at least one exception

apparently exists with respect to the rule that § 1141(a) describes the universe of

parties that may be bound by a confirmed plan or confirmation order, but the

4

Court held that such exception does not apply with respect to the I.R.S. in the instant matter.  Such exception is when an individual or entity appears and participates in litigation regarding an issue dealt with by a confirmed plan or confirmation order, or is in privity with such an individual or entity, such that such individual or entity (a) rises to the level of a party with respect to such plan or order, and (b) is thus subsequently bound by such plan or order by virtue of an application of the doctrine of *res judicata* regardless of whether such individual or entity is named within § 1141(a).  *See* Union Golf, 242 B.R. at 59 (citing, and then distinguishing, the decision in In re Justice Oaks II, Ltd., 898 F.2d 1544 (11th Cir. 1990), which decision is cited by Plaintiffs but also distinguished by this Court from the matter herein).  The Court is presently unaware of any other such exception, and to the extent that any of the cases cited by Plaintiffs for the proposition that individuals and entities may be bound even if not named in § 1141(a) stand on anything other than the exception as just described, the Court declines to follow such cases.  The Court held on May 27, 2005, and holds at the present time as well, that the exception as just described does not apply to the I.R.S. in the instant matter because, even presuming *arguendo* that the I.R.S. was a party-in-interest with respect to the instant bankruptcy case pursuant to 11 U.S.C. § 1109(b), thereby providing the I.R.S. with the right to appear and participate, the I.R.S. chose not to so appear and participate and thus did not become a party for purposes of the doctrine of *res judicata*.[1]  In light

---

[1]Plaintiffs cite to the decisions in Stoll v. Gottlieb, 305 U.S. 165, 172, 59 S.Ct. 134, 137-138, 83 L.Ed. 104 (U.S. 1938), and Nordhoff Investments, Inc. v.

of the foregoing, the Court held on May 27, 2005, and holds now, that the I.R.S.

is not bound by the terms of the Plan and the Confirmation Order.

Plaintiffs contend that, even if, as the Court has now ruled, the I.R.S. is

not bound by the terms of the Plan and the Confirmation Order so that the I.R.S.

is free, if it so chooses ultimately, to challenge the Tax Credit Findings, the Court

may nevertheless, by now granting to Plaintiffs the § 505(a)(1) declaratory relief

that they seek via Count II, reaffirm, and thus thereby henceforth preclude the

I.R.S. from challenging, the Tax Credit Findings.  The Court finds that Plaintiffs

are correct that, if, as Plaintiffs wish, the Court declares, pursuant to § 505(a)(1),

that the pre-confirmation I.R.C. § 29 tax credits asserted to have been earned by

the Debtor by way of the synthetic fuel that was produced pre-confirmation by

the Briquetters (hereafter "the Pre-Confirmation Tax Credits") are valid or viable,

then the Court necessarily will (a) have reaffirmed the Tax Credit Findings given

that such tax credits are dependent upon the making of such findings, and (b)

thereby preclude the I.R.S. henceforth from challenging such findings.

---

Zenith Electronics Corp., 258 F.3d 180, 190 (3rd Cir. 2001), as additional
authority for the proposition that the I.R.S. is presently bound by the Plan and the
Confirmation Order.  Unfortunately for Plaintiffs, such decisions do not support
their position.  The Stoll decision is inapplicable to the instant matter because it
is entirely predicated upon an application of the doctrine of res judicata, see
Stoll, 305 U.S. at 171-177, 59 S.Ct. at 137-140, which doctrine, as just set forth,
does not apply to bind the I.R.S. to the terms of the Plan and the Confirmation
Order.  As for the decision in Nordhoff Investments, it provides little aid to
Plaintiffs' cause in this Court given that it involved an application of the equitable
mootness doctrine, which doctrine apparently provides nothing more than an
equitable basis for an appellate tribunal – which this Court obviously is not – to
dismiss a bankruptcy appeal that respects a confirmed plan, see Nordhoff
Investments, 258 F.3d at 184-185.

6

The I.R.S., for several reasons, contends that (a) the Court may not, pursuant to 11 U.S.C. § 505(a)(1), declare that the Pre-Confirmation Tax Credits are valid or viable, and (b) judgment should thus be granted in its favor at this time on Count II.  First, the I.R.S. contends that § 505(a)(1), by its express terms, only grants to the Court authority to make a determination, that is a declaration, regarding an existent tax liability of a debtor, not a declaration as to a mere tax issue that may impact upon a future tax liability of such debtor.  The foregoing is fatal to Plaintiffs' Count II, argues the I.R.S., because, it argues in turn, Plaintiffs, by seeking a declaration as to the validity or viability of the Pre-Confirmation Tax Credits, could not possibly seek presently a determination as to an existent tax liability given that a federal income tax return has yet to be filed with the I.R.S., either pre- or post-confirmation, that reflects the calculation of a tax liability predicated in part upon the utilization of the Pre-Confirmation Tax Credits. Second, the I.R.S. maintains that declaratory relief regarding the validity or viability of the Pre-Confirmation Tax Credits would be inappropriate at this time since, argues the I.R.S. in turn, it has not yet (a) disallowed the Pre-Confirmation Tax Credits, or (b) challenged, for that matter, the Tax Credit Findings upon which such credits depend.  Put differently, the I.R.S. contends that the declaratory judgment action as pled in Plaintiffs' Count II is not ripe for adjudication by the Court at this time, that is that an actual controversy is not pled therein.  Finally, the I.R.S. contends that (a) the Court, as a matter of law, lacks subject matter jurisdiction to rule upon a post-confirmation tax liability via § 505(a)(1), (b) the validity or viability of the Pre-Confirmation Tax Credits could

7

only be relevant to a future post-confirmation tax liability given that a federal

income tax return has yet to be filed with the I.R.S., either pre- or post-

confirmation, that reflects the calculation of a tax liability predicated in part upon

the utilization of the Pre-Confirmation Tax Credits, and (c) the Court thus lacks

jurisdiction to rule upon the validity or viability of the Pre-Confirmation Tax

Credits via § 505(a)(1).

Plaintiffs, as one would expect, take issue with each of the foregoing

arguments of the I.R.S.  First, Plaintiffs maintain that the Court, when ruling

under § 505(a)(1), is not confined to only ruling upon existent tax liabilities of

such debtor – Plaintiffs thus argue that the Court can, pursuant to § 505(a)(1),

make determinations regarding tax issues that merely impact upon a future tax

liability of a debtor.  Second, the Court understands Plaintiffs to argue that, and

because, the successful implementation of the Plan is based, in large part, upon

a present adjudication that the Pre-Confirmation Tax Credits are valid or viable, a

declaratory judgment action regarding the validity or viability of such credits is

thus ripe for adjudication.  Finally, Plaintiffs argue that (a) the Court may pass

upon a post-confirmation tax liability provided that, to do so, it need only consider

pre-confirmation events, and (b) the earning of the Pre-Confirmation Tax Credits

constituted a pre-confirmation event.

For the reasons set forth below the Court determines that it (a) may not,

pursuant to 11 U.S.C. § 505(a)(1), declare that the Pre-Confirmation Tax Credits

are valid or viable, and (b) thus shall grant the I.R.S.' motion for judgment on the

8

pleadings with respect to Count II.[2]

## DISCUSSION

I.    **What Plaintiffs actually seek via their Count II.**

As an initial matter, the Court wishes to address the following

representation made by Plaintiffs in one of their last responses to the I.R.S.'

motion for judgment on the pleadings:

> Plaintiffs are seeking reaffirmation of factual findings
>
> contained in the Confirmation Order that relate to facts that predate
>
> the bankruptcy case.  These facts lay the factual foundation for
>
> entitlement to tax credits as of the date on which the Debtor filed its
>
> petition for relief under Chapter 11 of the Bankruptcy Code.  The
>
> legal result which may follow that factual determination is not
>
> presently at issue here.

*See* Pls.' Br. dat. 5/25/05, at p. 4 (Resp. # 5).  By making such a statement, what

Plaintiffs essentially thereby represent to the Court is that, via their Count II, all

that they wish to obtain in the way of relief is a reaffirmation of the Tax Credit

Findings rather than, as well, a declaration that the Pre-Confirmation Tax Credits

are valid or viable.  The Court disagrees with such representation by Plaintiffs for

two reasons.  First, Plaintiffs, throughout their papers, make clear that they also

---

[2]Because the Court grants the I.R.S.' motion for judgment on the
pleadings with respect to all of the counts for which the I.R.S. is named as a
party defendant, the Court need not, and thus will not, address the I.R.S.'
position that, by virtue of the doctrine of sovereign immunity, it may not presently
be sued by Plaintiffs.

AO 72A
(Rev. 8/82)

wish to obtain a declaration from the Court that the Pre-Confirmation Tax Credits

are valid or viable.  Second, and perhaps more importantly, if what Plaintiffs wish

to obtain via their Count II is a reaffirmation of the Tax Credit Findings *that will*

*now be binding upon the I.R.S.* (and there is no question that such is precisely

that which is sought by Plaintiffs), then Plaintiffs must (a) attempt to proceed

under § 505(a)(1), as they in fact expressly seek to do via such count, given that

such statutory provision is the only conceivable avenue by which Plaintiffs can so

bind the I.R.S., (b) seek a tax-related declaration given that such is solely that

which is the subject of § 505(a)(1), and (c) hope that, as a matter of law, they

may obtain, via § 505(a)(1), a declaration regarding but a tax issue that impacts

upon a tax liability of the Debtor, namely the validity or viability of the tax credits

that depend upon the Tax Credit Findings, that is the Pre-Confirmation Tax

Credits.

The Court rules that a § 505(a)(1) declaratory judgment action is the only

conceivable avenue by which Plaintiffs can obtain a reaffirmation of the Tax

Credit Findings that will be binding upon the I.R.S. (a) because, even if Plaintiffs

are correct that this Court, as a bankruptcy court, is not restricted by the

Declaratory Judgment Act, 28 U.S.C. § 2201(a), in the type of federal tax-related

declaratory judgment actions that it can preside over,[3] "courts of bankruptcy, like

---

[3]Plaintiffs appear to so argue because they argue, in turn, that a
bankruptcy court is not a "court of the United States" within the meaning of the
Declaratory Judgment Act, thus freeing such a court from the confines of such
statute, which statute operates to substantially limit a "court of the United States"
in its ability to render declaratory judgments vis-a-vis federal tax issues.

AO 72A
(Rev. 8/82)

any other courts, [nevertheless] have no power to afford declaratory relief unless

affirmatively authorized to do so by some statutory provision," In re Becker's

Motor Transportation, Inc., 632 F.2d 242, 247 (3rd Cir. 1980), and (b) since

§ 505(a)(1) is the only statutory provision that provides such affirmative

authorization vis-a-vis the Tax Credit Findings that will be binding upon the

I.R.S., see Id. (citing the Bankruptcy Act precursor to § 505(a)(1), as well as the

Bankruptcy Act precursor to 11 U.S.C. § 105(a), as statutory provisions providing

authorization to render declaratory judgments vis-a-vis federal tax claims).  The

Court holds that § 505(a)(1) provides the only statutory authorization for the

declaratory relief that Plaintiffs seek for several reasons.  First, § 105(a), by itself,

does not provide the Court with sufficient authorization to render a declaratory

judgment vis-a-vis a tax issue of a type that would be inconsistent with that which

can be granted via § 505(a)(1).  See In re Kaplan, 104 F.3d 589, 598 (3rd Cir.

1997) ("The broad powers granted to the bankruptcy court under section 105 are

insufficient alone to authorize" relief that would otherwise be unavailable under

the Code).  Second, the Court summarily holds, Plaintiffs' contrary pleas

notwithstanding, that 11 U.S.C. § 1142(b) does not provide the Court with

authority to grant declaratory relief that would be at odds with that which can be

granted via § 505(a)(1) – in fact, the Court questions whether § 1142(b) can

provide authority for the grant of any type of declaratory relief.[4]  Third, the Court

---

[4]11 U.S.C. § 1142(b) only authorizes the Court to "direct the debtor and
any other necessary party" to take particular actions.  It does not provide
authorization for a grant of declaratory relief.  As an aside, it would appear that
the I.R.S. cannot be a "necessary party" within the meaning of § 1142(b) since

summarily rejects Plaintiffs' contention that 11 U.S.C. § 541(a)(1) provides the

Court with authority to grant declaratory relief as to the validity or viability of a tax

credit.  True, § 541(a)(1) vests the Court with authority to determine whether a

tax credit constitutes property of a debtor's bankruptcy estate; however,

§ 541(a)(1) does not give the Court independent authority to do what cannot be

done via § 505(a)(1), namely render an advisory opinion as to the validity or

viability of such tax credit once it is determined that such tax credit is property of

such bankruptcy estate.  Finally, neither the decision in U.S. v. Energy

Resources Co., Inc., 495 U.S. 545, 110 S.Ct. 2139, 109 L.Ed.2d 580 (U.S.

1990), upon which decision Plaintiffs heavily rely, nor the primary statutory

authority for the decision therein, that is 11 U.S.C. § 1123(b)(6), *see* Energy

Resources, 495 U.S. at 549, 110 S.Ct. at 2142 (the Supreme Court actually

utilized § 1123(b)(5), which is the precursor to the present-day § 1123(b)(6)),

authorize this Court to grant declaratory relief regarding the Tax Credit Findings

that will bind the I.R.S.  With respect to the Energy Resources decision itself, the

same is readily distinguishable from the instant matter because, whereas the

I.R.S. was a creditor and a party that was bound by a plan and confirmation

order in Energy Resources, the I.R.S. is not a creditor and such a party in the

instant matter.  Not surprisingly then, § 1123(b)(6), upon which the Energy

Resources court heavily relied, is of no use regarding authority for the

declaratory relief that Plaintiffs seek herein given that (a) such statutory provision

_____

the I.R.S., as set forth above, is neither a party that can be bound by the Plan
and the Confirmation Order nor is a party for purposes of *res judicata*.

AO 72A
(Rev. 8/82)

provides for nothing other than a plan to "include any other appropriate provision

not inconsistent with the applicable provisions of this title," 11 U.S.C.A.

§ 1123(b)(6) (West 2004), and (b) a plan provision thus authorized regarding the

Tax Credit Findings – which plan provision actually exists in the Plan and the

Confirmation Order – nevertheless could not, indeed cannot, for reasons already

discussed, bind the I.R.S.

Therefore, and contrary to the substance of the above representation by

Plaintiffs, what Plaintiffs seek via their Count II is, at bottom, a declaration,

pursuant to § 505(a)(1), that the Pre-Confirmation Tax Credits are valid or viable.

II.   **Whether Plaintiffs can obtain a § 505(a)(1) declaration that the Pre-Confirmation Tax Credits are valid or viable?**

Having held that what Plaintiffs seek via their Count II is, and that

§ 505(a)(1) is the only conceivable avenue by which Plaintiffs can obtain, a

declaration that the Pre-Confirmation Tax Credits are valid or viable, the Court

next holds that Plaintiffs cannot obtain, via § 505(a)(1), such declaration. The

Court so holds for several reasons, each of which was advanced by the I.R.S. in

support of its motion for judgment on the pleadings.

First, the Court, when ruling under § 505(a)(1), is, as a matter of law,

confined to only ruling upon existent tax liabilities of a debtor, that is the Court

cannot, pursuant to § 505(a)(1), make determinations regarding tax issues that

merely impact upon a future tax liability of a debtor. *See* In re Grand Chevrolet,

Inc., 153 B.R. 296, 298-300 (C.D.Cal. 1993) ("there is no grant of jurisdiction

[under § 505] to decide issues that are antecedent to the determination of tax

13

liability" and no such jurisdictional grant "to determine one issue that will affect

the amount of a tax liability on a tax return not yet filed"); In re Inter Urban

Broadcasting of Cincinnati, Inc., 180 B.R. 153, 155-156 (Bankr.E.D.La. 1995)

(same).  Second, Plaintiffs, by seeking a declaration as to the validity or viability

of the Pre-Confirmation Tax Credits, necessarily seek a determination that

cannot be made under § 505(a)(1).  The Court so rules because Plaintiffs cannot

possibly seek presently a determination as to an existent tax liability predicated

in part upon the utilization of the Pre-Confirmation Tax Credits given that a

federal income tax return has yet to be filed with the I.R.S., either pre- or post-

confirmation, that reflects the calculation of such a tax liability.  Third, Plaintiffs'

declaratory judgment action regarding the validity or viability of the Pre-

Confirmation Tax Credits is not presently ripe for adjudication since the I.R.S.

has not yet (a) disallowed the Pre-Confirmation Tax Credits, or (b) challenged

the Tax Credit Findings upon which such credits depend.[5]  See Grand Chevrolet,

---

[5]Plaintiffs also appear to argue that a declaratory judgment action
regarding the Tax Credit Findings is presently ripe for adjudication because (a)
the Debtor took depreciation deductions with respect to the Briquetters on its
1998 and 1999 federal income tax returns, and (b) such depreciation deductions,
argues Plaintiffs, could only have been taken if the placed in service
requirements of I.R.C. § 29 with respect to the Briquetters were met (that such
requirements were met, of course, constitutes the substance of much, if not all,
of the Tax Credit Findings).  The Court identifies at least three problems with the
preceding argument by Plaintiffs.  First, as the Court understands it, whether the
Debtor was eligible to take tax depreciation on the Briquetters in 1998 and 1999
depends not upon whether the Briquetters were placed in service within the
meaning of I.R.C. § 29 but rather upon whether the Debtor satisfied depreciation
eligibility requirements imposed by I.R.C. §§ 167 – 168 vis-a-vis such machinery
(i.e., whether such machinery was owned and used during 1998 and 1999).
Second, that the Debtor owned and used such machinery during 1998 and 1999
could not, by itself, establish that such machinery also met all of the placed in

14

153 B.R. at 299 (no denial by the I.R.S. of tax status sought by the Trustee and "more than a belief that the I.R.S. will deny the consolidated status is necessary to ripen the claim"); Inter Urban Broadcasting, 180 B.R. at 156.  That the successful implementation of the Plan is based, in large part, upon a present adjudication that the Pre-Confirmation Tax Credits are valid or viable – even if true – does not alter the foregoing conclusion that Plaintiffs' Count II request for declaratory relief is presently not ripe for adjudication.  See Inter Urban Broadcasting, 180 B.R. at 155-156 (that the debtor may not make distributions pursuant to a confirmed plan absent the declaratory judgment sought by the debtor "do[es] not get around the problem that the [declaratory judgment] complaint ... is not ripe for a decision as to the IRS").[6]  Finally, substantial case

---

service requirements imposed by I.R.C. § 29 given that at least one of the requisite deadlines under § 29 substantially predates 1998 – i.e., the requirement in I.R.C. § 29(g)(1)(A) that facilities be placed in service "pursuant to a binding written contract in effect before January 1, 1997."  Finally, that the Debtor took tax depreciation on the Briquetters in 1998 and 1999 does not even serve to make ripe for adjudication at this time whether such depreciation deductions were proper given (a) that, as the Court understands it, the I.R.S. thus far has neither disallowed nor even challenged the propriety of such deductions, and (b) that a case or controversy regarding such deductions thus presently does not exist.

[6]The lone case cited by Plaintiffs that the Court finds of any note on the issues of ripeness and the applicability of § 505(a) to a tax question presented before a bankruptcy court is In re Popa, 218 B.R. 420 (Bankr.N.D.Ill. 1998), wherein it was held that a declaration regarding the availability of the I.R.C. § 121 homestead exclusion to a bankruptcy estate was warranted under § 505(a), and was ripe as well, notwithstanding that a tax return had not yet been filed wherein was reflected both a sale of the subject realty and the taking of such exclusion.  The Court frankly is persuaded neither by the distinction that the Popa court draws between the facts of its case and those presented in Grand Chevrolet and Inter Urban Broadcasting nor by the Popa court's analysis in general vis-a-vis the issues for which Plaintiffs herein cite to such decision.

15

authority exists for the proposition that a bankruptcy court, as a matter of law,

may not pass upon a post-confirmation tax liability under § 505(a)(1), not even if

such court can do so by only considering pre-confirmation events.  *See* In re

Stayner, 185 B.R. 557, 563 (Bankr.N.D.Ill. 1995); In re Holly's, Inc., 172 B.R.

545, 562 (Bankr.W.D.Mich. 1994); In re Maley, 152 B.R. 789, 792

(Bankr.W.D.N.Y. 1992); In re Hartman Material Handling Systems, Inc., 141 B.R.

802, 812-813 (Bankr.S.D.N.Y. 1992).  Furthermore, even if contrary case

authority – i.e., authority to the effect that a bankruptcy court can utilize § 505(a)

to make a declaration regarding a post-confirmation tax liability provided that it

can do so by only considering pre-confirmation events, *see* O'Cheskey v. United

States, 2001 WL 1658144 at 18 (N.D.Tex. 2001) – is correct, such authority is of

no use to Plaintiffs herein given that (a) not even a post-confirmation tax liability

predicated in part upon the utilization of the Pre-Confirmation Tax Credits

presently exists of which the Court is aware that could be the subject of a

declaratory judgment action under § 505(a), and (b) any such post-confirmation

tax liability, even were it to exist, necessarily could not be ruled upon without also

considering post-confirmation events such as, for example, the earning of

---

Nevertheless, even if the Popa decision is correct, such decision can be distinguished from the instant matter – at least with respect to the issue of ripeness – given that the tax exclusion issue raised in Popa was certain to result in a controversy between the bankruptcy trustee therein and the I.R.S. if such trustee attempted to sell the subject realty rather than abandon the same, whereas in the instant matter it is speculative at best whether (a) the Pre-Confirmation Tax Credits could ever be utilized (indeed, the I.R.S. maintains that such tax credits, even if they were at one time valid or viable, now have lapsed), and (b) a controversy would thus ever arise between Plaintiffs and the I.R.S.

16

income sufficient to offset the taking of such tax credits.

In light of the foregoing, the Court holds that Plaintiffs cannot obtain a declaration, pursuant to § 505(a)(1), that the Pre-Confirmation Tax Credits are valid or viable.[7]  Therefore, Plaintiffs cannot obtain the relief that they seek via their Count II under any set of circumstances.  Thus, the Court shall grant the I.R.S.' motion for judgment on the pleadings with respect to Count II.

### CONCLUSION

For all of the foregoing reasons, the I.R.S.' motion for judgment on the pleadings shall be granted with respect to Count II.

An appropriate order will be entered.

**BY THE COURT**

**M. BRUCE McCULLOUGH,**
**U.S. Bankruptcy Judge**

**DATED:        June 30, 2005**

---

[7]Plaintiffs contend, in their last brief at page 6, that, "[i]f the Court properly asserted jurisdiction to make placed in service findings in June, 2000 when it confirmed the [P]lan, then it certainly has jurisdiction to reaffirm such findings today."  Unfortunately for Plaintiffs, the Court lacked jurisdiction to bind the I.R.S. in June 2000 even if it had jurisdiction, perhaps via § 1123(b)(6) for instance, to otherwise then make such findings.  Because the predicate for such argument by Plaintiffs fails, the argument itself, of course, necessarily also fails.

17